IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| Z.C., individually and on behalf of C.C., a minor,<br><br>        Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE BENEFITS PLAN OF CALIFORNIA and OPTUMHEALTH BEHAVIORAL SOLUTIONS OF CALIFORNIA,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>Case No. 1:25-cv-13<br><br>Judge Tena Campbell |

On January 31, 2025, Plaintiff Z.C., individually and on behalf of his minor child, C.C., filed a Complaint against Defendants United Healthcare Benefits Plan of California (United) and OptumHealth Behavioral Solutions of California (Optum) asserting two claims: 1) a claim for recovery of benefits under a plan governed by the Employee Retirement Income Security Act of 1974, as amended (ERISA), see 29 U.S.C. § 1132(a)(1)(B); and 2) a claim for equitable relief based on the Defendants' alleged violation of the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA, or the Parity Act), see 29 U.S.C. § 1132(a)(3). (ECF No. 1 at ¶¶ 43–76.) Currently at issue before the court is the Defendants' Motion to Dismiss. (ECF No. 15.)

## BACKROUND

As alleged in the Complaint, C.C. received medical care and treatment at Elevations Residential Treatment Center (Elevations) from March 29, 2022, to January 5, 2023. (ECF No. 1

at ¶ 5.)  C.C.'s father, Z.C., is a participant in an employee welfare benefits plan (the Plan) that provides health care coverage for Z.C. and C.C. and is governed by ERISA.  (Id. ¶¶ 2, 4.)  C.C. was a beneficiary of the Plan during the period when C.C. was receiving care at Elevations.  (Id. ¶ 4.)  United is the insurer and claims administrator for the plan, while Optum processes mental health claims on United's behalf.  (Id. ¶¶ 2–3.)

C.C. experienced issues with anxiety, self-harm, and suicidal ideation.  (Id. ¶¶ 15–16.) These problems eventually became so severe that C.C. was admitted into a partial hospitalization program called Visions.  (Id. ¶ 16.)  Due to harmful behaviors, including binging, purging, and self-cutting, C.C. was placed under an involuntary hospital psychiatric hold and then began receiving residential treatment at Visions.  (Id. ¶¶ 16–17.)  C.C.'s treatment team at Visions recommended that C.C. receive ongoing care after discharge, and C.C. was subsequently admitted to Elevations on March 29, 2022.  (Id. ¶¶ 17–18.)

In a letter addressed to Elevations dated April 12, 2022, Optum denied payment for C.C.'s treatment from April 12, 2022, forward.  (Id. ¶ 19.)  The letter offered the following reasons for denying coverage:

> The member was admitted for the treatment of depression and anxiety.
>
> After reviewing available information, it is noted he has made progress and his condition no longer meets CASII [Child and Adolescent Service Intensity Instrument] Recommendations for further coverage of treatment in this setting. His physical health is good.  His depression and anxiety are better.
>
> He is not reporting having thoughts of wanting to harm himself or others.  His behavior is safe.  He has family support.  There's a safe, stable recovery environment available to him at home.
>
> His care and recovery needs could be met in the CASII Service Level 4: Medically Monitored Non-Residential Service (Mental Health Partial Hospital Program) setting.

(Id. ¶ 19.)

On December 9, 2022, C.C.'s mother submitted an appeal challenging the denial of payment for C.C.'s treatment at Elevations.  (Id. ¶ 20.)  She argued that the CASII criteria had been discontinued and replaced by the Child and Adolescent Level of Care/Service Intensity Utilization System (CALOCUS-CASII) criteria.  (Id. ¶ 23.)  And she argued that because Optum authorized payment for two weeks of C.C.'s treatment, Optum must have determined, at least initially, that C.C. met the prerequisites for care at the residential level.  (Id. ¶ 25.)

In a letter addressed to Elevations dated December 16, 2022, Optum upheld the denial of payment for all but the first two weeks of C.C.'s treatment there.  (Id. ¶ 31.)  The letter stated:

> The member's presenting problems had improved.  The member had no significant medical complications at the time.  The member's mood symptoms were stable.  The member's home environment was supportive with no barriers identified.  The member was fully engaged and actively participating in treatment. The member was generally cooperative and appropriate and there have been no recent behavioral events to indicate risk of harm.
>
> Based on the application of the American Association of Community Psychiatrists Level of Care Utilization System (CALOCUS-CASII), Mental Health Intensive Outpatient Program services were indicated instead of the Mental Health Residential Treatment Center services requested.

(Id.)

Concurrently, Optum sent another letter addressed to C.C., also dated December 16, 2022, which stated:

> Your request was reviewed.  We have denied the medical services requested because we looked at your case notes.  The criteria were not met because:
>
> - You were doing better.
> - You were thinking more clearly.
> - Your mood was better.
> - Your behavior was better.
> - Your health was stable.

(Id. ¶ 32.)

3

On March 14, 2023, C.C.'s mother asked for the denial of payment to be evaluated by an external review agency. (Id. ¶ 33.) In response, in a letter dated April 4, 2023, Optum noted that it has received the review request but stated: "[Y]ou have exhausted your right for any further review under the health plan." (Id. ¶ 39.)

## LEGAL STANDARD

To survive a motion to dismiss, the factual allegations in a complaint must raise a plausible right to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–56 (2007). A claim is facially plausible when the plaintiff pleads enough factual content to justify the reasonable inference the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). And while factual allegations asserted in a complaint are accepted as true for purposes of a motion to dismiss, conclusory allegations in a complaint are not entitled to such deference and are insufficient to state a claim. Id.

## ANALYSIS

The Defendants argue that the Plaintiffs have not adequately specified the term or terms of the Plan under which they believe C.C.'s treatment at Elevations should have been covered. The Defendants also argue that the Plaintiffs fail to state a Parity Act claim. The court addresses each argument in turn.

### I.      The Plaintiffs Adequately Plead a Denial of Benefits Claim

A plaintiff may file suit to recover benefits due "under the terms" of a plan that is governed by ERISA. 29 U.S.C. § 1132(a)(1)(B). To state a plausible claim for benefits, a plaintiff must allege sufficient facts to allow the court to reasonably infer that the terms of the plan require benefits to be paid. IHC Health Serv., Inc. v. Cent. States, Se. & Sw. Areas Health & Welfare Fund, 2:17-cv-1327-JNP, 2018 WL 3756959, at *2 n.1 (D. Utah Aug. 8, 2018)

("Failure to specify the allegedly breached plan term is grounds for dismissal." (citation omitted)).

The Defendants argue that the Plaintiffs fail to state a claim because they do not "reference a single Plan term in their Complaint" and "fail to allege how Defendants did not reasonably adjudicate the claims under the Plan once [the Defendants] determined, among other things, that continued services at Elevations was no longer medically necessary." (ECF No. 15 at 11.)

But the Defendants themselves have referred to the relevant Plan term—namely, that the Plan covers mental health treatments that are medically necessary. (See Plan, ECF No. 16-1 at 11; ECF No. 16-2 at 20.[1]) And the Plaintiffs clearly make this allegation in the Complaint: "The actions of United, Optum, and the Plan in failing to provide coverage for C.C.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria." (Compl. ¶ 51; see also id. ¶ 44 (alleging that the terms of the Plan "promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders").) In support of that claim, the Plaintiffs allege that 1) the Defendants used discontinued criteria to evaluate C.C.'s treatment; 2) ignored parts of C.C.'s medical records that C.C.'s mother referenced in appeal letters; 3) provided specific examples of how C.C. sabotaged his treatment; and 4) pointed to examples when C.C. had regressed during treatment at Elevations. (Id. ¶¶ 23, 26, 28–29.) Resolving all factual allegations in the Plaintiffs' favor at this stage in the litigation, the court finds that the Plaintiffs have plausibly alleged that C.C.'s treatment was medically necessary.[2]

---

[1] Citations refer to PDF pages, not internal document pages.

[2] The Plan defines "medically necessary" as follows: "[H]ealth care services provided for the purpose of … treating … mental illness" in accordance with generally accepted standards of

5

This finding is further supported by the Plaintiffs' allegation—which the Defendants do not dispute—that the Defendants paid for the first two weeks of C.C.'s treatment at Elevations. (See Compl. ¶¶ 18–19; Defs.' Reply, ECF No. 32 at 4.)  This initial coverage suggests that C.C.'s treatment at Elevations was medically necessary and met the other requirements for benefits eligibility under the Plan for at least some period of time.  While the Defendants dispute that C.C.'s treatment continued to be medically necessary, this analysis is a question for review on the record.  "Indeed, attempting to resolve these issues at this stage would essentially create an end-run around the structured process for judicial review in ERISA cases for a Plan participant challenging a specific denial of coverage."  N.E. v. Blue Cross Blue Shield of N.C., No. 1:21-cv-684, 2023 WL 2696834, at *8 (M.D.N.C. Feb. 24, 2023).

The cases cited by the Defendants do not suggest a different result.  For instance, in IHC Health Service, Inc., the court dismissed a claim for recovery of plan benefits where the plaintiff primarily relied on an exemption letter authorizing certain out-of-network coverage rather than any plan term.  2018 WL 3756959, at *3.  And in Smith v. Cigna Health and Life Insurance Company, the plaintiff did not even identify which of multiple health insurance plans his employer offered was the subject of his complaint.  No. 3:20-cv-624, 2020 WL 5834786, at *4 (D. Ore. Sept. 30, 2020).  In any event, both courts dismissed the benefits claim without prejudice and allowed the plaintiff the opportunity to amend.  IHC Health Serv., Inc., 2018 WL 3756959, at *4; Smith, 2020 WL 5834786, at *10.

---

medical practice and in a clinically appropriate way known to be effective in improving health outcomes.  (ECF No. 16-2 at 24–25.)

Because the Plaintiffs have adequately alleged that C.C.'s treatment was medically necessary and that his care at Elevations was a covered benefit under the Plan, there is no need for the Plaintiffs to file an amended complaint.

## II.      The Plaintiffs Adequately Plead a Parity Act Claim

Congress enacted the Parity Act in 1996 as an amendment to ERISA in an effort "to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans." Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 356 (2d Cir. 2016).  Under the statute, a health plan must ensure that

> the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(a)(3)(A)(ii).  In effect, the Parity Act "prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently." David S. v. United Healthcare Ins. Co., No. 2:18-cv-803-RJS, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019).  The Tenth Circuit has allowed plaintiffs to bring a claim for a violation of the Parity Act under 29 U.S.C. § 1132(a)(3), which provides that a plan beneficiary may seek equitable relief in a civil action to redress ERISA violations.  See E.W. v. Health Net Life Ins. Co., 86 F.4th 1265, 1281 (10th Cir. 2023) (noting that, while the parties did not contest the viability of such a claim on appeal, the court would resolve the dispute "on the assumption that, as a categorical matter, such a claim is viable").

The Parity Act's implementing regulations prohibit unequal treatment limitations for "both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient

visits per year), and nonquantitative treatment limitations (such as standards related to network composition), which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a)(2). Nonquantitative treatment limitations on mental health benefits include "[m]edical management standards … limiting or excluding benefits based on medical necessity or medical appropriateness, or based on whether the treatment is experimental or investigative" and "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." Id. § 2590.712(c)(4)(ii)(A), (H).

The Tenth Circuit has upheld the following test to determine whether a plaintiff has adequately stated a Parity Act violation: 1) the plaintiff must plausibly allege that the relevant group health plan is subject to the Parity Act; 2) the plaintiff must "identify a specific treatment limitation on mental health or substance-use disorder benefits covered by the plan;" 3) the plaintiff must "identify medical or surgical care covered by the plan that is analogous to the mental health or substance-use disorder care" for which the plaintiff seeks benefits; and 4) the plaintiff must "plausibly allege a disparity between the treatment limitation on mental health or substance-use disorder benefits as compared to the limitations that defendants would apply to the medical or surgical analog." E.W., 86 F.4th at 1283.[3]

A plaintiff may challenge treatment limitations either facially or as applied. Id. at 1284 (citing 29 C.F.R. § 2590.712(c)(4)(i)); see also Nancy S. v. Anthem Blue Cross & Blue Shield, No. 2:19-cv-231-JNP, 2020 WL 2736023, at *3 ("[P]laintiffs often must plead 'as-applied'

---

[3] Notably, the Tenth Circuit did not specify that this test was the only appropriate standard for evaluating a Parity Act claim. See E.W., 86 F.4th at 1282–83 (noting that the parties agreed to this test at oral argument but not discussing whether other tests that district courts had applied were inappropriate). But given the Tenth Circuit's approval, the court adopts this standard.

challenges to enforce their Parity Act rights when a disparity in benefits criteria occurs in application rather than in the plan terms."). While facial challenges focus on the terms of a plan, "as-applied challenges focus on treatment limitations that a plan applies 'in operation.'" E.W., 86 F.4th at 1284 (citing 29 C.F.R. § 2590.712(c)(4)(i)). In an as-applied challenge, "a plaintiff must plausibly allege that a 'defendant differentially applies a facially neutral plan term.'" Id. (citing Jeff N. v. United HealthCare Ins. Co., No. 2:18-cv-710-DN, 2019 WL 4736920, at *4 (D. Utah Sept. 27, 2019)).

The Plaintiffs acknowledge that the Plan is facially neutral in that the same definition of "medically necessary" applies to both mental health and medical/surgical benefits. (See ECF No. 16-1 at 23; ECF No. 16-2 at 20, 24–25.) Indeed, the Plan explicitly states: "Benefits for Medically Necessary treatment of Mental Health Care and Substance-Related and Addictive Disorder Services will be provided under the same terms and conditions applied to other medical conditions." (Id.) But the Plaintiffs bring an as-applied challenge, asserting that the Defendants applied a facially neutral plan term differentially. See Vorpahl v. Harvard Pilgrim Health Ins. Co., No. 17-cv-10844, 2018 WL 3518511, at *4 (D. Mass. July 20, 2018) (holding that, read in the light most favorable to plaintiffs, defendants differentially applied a facially neutral plan term). Specifically, the Plaintiffs maintain that the Defendants wrongfully imposed acute symptomology requirements when determining whether care was medically necessary. (Compl. ¶ 61.) The Plaintiffs further allege that the Defendants do not require acute symptomology before providing coverage for medical/surgical claimants who receive subacute care. (Id. ¶ 57–62.)

While the Defendants do not dispute that the Plan is subject to the Parity Act, the Defendants take issue with the other three elements of the E.W. test, arguing that the Plaintiffs

9

have not plausibly alleged a mental health treatment limitation, have not demonstrated that subacute medical/surgical facilities (such as skilled nursing and rehabilitation facilities) are analogous care to the mental health treatment C.C. received at Elevations, and have failed to show that coverage and benefit outcomes would have been different for medical/surgical care received at these types of subacute facilities.

But the cases the Defendants cite in support of their position were all decided before the Tenth Circuit issued its decision in E.W.  (See ECF No. 15 at 15–16 (citing Michele T. v. Oxford, No. 2:19-cv-507-TC, 2020 WL 4596961, at *5 (D. Utah Aug. 11, 2020); Margaret G.T. v. Oxford Health Plans (NJ), Inc., No. 2:20-cv-211-DBB, 2021 WL 391432, at *3 (D. Utah Feb. 4, 2021); Anne M. v. United Behav. Health, No. 2:18-cv-808-TS, 2019 WL 1989644, at *3 (D. Utah May 6, 2019).)  In E.W., the Tenth Circuit addressed many of the arguments that the Defendants now raise.

First, the Tenth Circuit found that the plaintiffs in E.W. identified a specific treatment limitation on mental health benefits where they plausibly alleged that the defendants "required them to satisfy 'acute care medical necessity criteria' to receive benefits for treatment in a subacute care setting." E.W., 86 F.4th at 1285.  While focusing on the specific criteria utilized by the plan in question, the court noted that acute care was generally characterized by recent or worsening conditions that required prompt care, whereas subacute care tended to focus on longer-term care designed to improve a patient's level of functioning.  Id. at 1286–87.

Here, the court finds that the Plaintiffs have plausibly alleged that the Defendants applied acute criteria to determine whether C.C.'s care was medically necessary.  For instance, the Defendants denied coverage in part because C.C. was "thinking more clearly" and "not reporting having thoughts of wanting to harm himself or others."  (Compl. ¶¶ 61, 66.)  The Plaintiffs

10

further allege that the Defendants denied coverage because C.C. did not exhibit any immediate suicidal or homicidal behaviors during C.C.'s first two weeks at Elevations.  (Id. ¶ 65.)  Indeed, one of the denial letters stated that "there have been no recent behavioral events to indicate risk of harm."  (Id. ¶ 31.)  Taken in the light most favorable to the Plaintiffs, these allegations plausibly suggest that the Defendants used acute criteria focused on immediate harm to assess whether C.C.'s care was medically necessary.

Second, the Tenth Circuit held that regulations promulgated after Congress passed ERISA (referred to by the court as the Final Rules) treat care in an inpatient skilled nursing facility as analogous to care in a residential treatment center, such as Elevations:

> These passages [from the Final Rules] demonstrate that care in an inpatient skilled nursing facility is analogous to care in a residential treatment center—which also provides inpatient care—for purposes of [the Parity Act]'s parity requirement. Although the Final Rules did not provide an exhaustive list of analogues, they describe treatment in skilled nursing facilities and residential treatment centers as "comparable" intermediate services.  Based on this guidance in the Final Rules, and consistent with caselaw, we conclude Plaintiffs plausibly alleged that care in inpatient skilled nursing facilities and residential treatment centers are analogues for purposes of [the Parity Act].

E.W., 86 F.4th at 1288–89 (citations omitted).  Here, the Plaintiffs have similarly pointed to skilled nursing facilities and other intermediate, subacute medical/surgical treatment facilities as analogous to the level of care C.C. received at the residential treatment center.  (Compl. ¶ 58.)

Finally, the Tenth Circuit found that "[t]he allegation that [the defendant] applied subacute criteria to analogous medical or surgical care, such as treatment in a skilled nursing facility, is a factual allegation that we must accept as true on [the defendant's] motion to dismiss."  E.W., 86 F.4th at 1289.  The court based its finding in part on the discrepancy of information possessed by the plaintiffs at that stage of the lawsuit, emphasizing that the plaintiffs had asked the plan administrator for the criteria the administrator used when assessing coverage

11

at a skilled nursing facility, but that the administrator had refused to provide this information.  Id. at 1290–91.  The court noted that the administrator's "refusal to provide the medical necessity criteria Plaintiffs requested further supports our conclusion that Plaintiffs plausibly alleged a disparity."  Id. at 1291.

Here, the Plaintiffs similarly asked for a copy of the governing plan documents, a copy of the CALOCUS-CASII criteria that the Defendants used to determine coverage, and "any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities …."  (Compl. ¶¶ 30, 35, 42.)  But the Defendants did not produce the requested information.  (Id. ¶ 42.)  Where there is a discrepancy of information, "courts are declining to hold plaintiffs 'responsible for documents and information that remain within defendants' exclusive control,' especially because plaintiffs should 'not be punished for not offering those facts when their repeated requests to learn the same have been ignored.'"  T.E. v. Anthem Blue Cross & Blue Shield, No. 3:22-cv-202, 2023 WL 2634059, at *6 (W.D. Ky. Mar. 24, 2023) (quoting Nathan W. v. Anthem Bluecross Blueshield of Wis., No. 2:20-cv-122-JNP, 2021 WL 842590, at *8 (D. Utah Mar. 5, 2021)).  The court therefore finds that the Plaintiffs have plausibly alleged there was a disparity between treatment limitations applied to benefits for care at a residential treatment center compared to benefits for analogous medical and surgical care.

Because the Plaintiffs have identified a mental health treatment limitation, a medical or surgical analog to the mental health care that C.C. received, and a plausible disparity between the treatment limitation imposed on C.C.'s mental health care compared to the limitations the Defendants would have applied to the medical or surgical analog, the court finds that the Plaintiffs have adequately pled the elements of a Parity Act claim.

## ORDER

For the foregoing reasons, the Defendants' Motion to Dismiss (ECF No. 15) is DENIED.

DATED this 30th day of March, 2026.

BY THE COURT:

Tena Campbell
United States District Judge