SEYFARTH SHAW LLP
Mark. A. Wagner (UT 06353)
mawagner@seyfarth.com
975 F St., N.W.
Washington, DC 20004
Telephone: (415) 732-1152

Amanda L. Genovese (*pro hac vice*)
agenovese@seyfarth.com
620 Eighth Avenue
New York, NY 10018-1405
Telephone:  (212) 218-5621

Ada W. Dolph (*pro hac vice* forthcoming)
adolph@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Telephone:  (312) 460-5977

*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Z.C., individually and on behalf of C.C., a minor, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED HEALTHCARE BENEFITS PLAN of CALIFORNIA OPTUMHEALTH BEHAVIORAL SOLUTIONS OF CALIFORNIA, <br><br> Defendants. | Case No. 1:25-cv-00013-TC <br><br><br> **DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT** |

325083515v.1

Defendants, by and through their attorneys, Seyfarth Shaw LLP, hereby submit their Answer and Affirmative Defenses to Plaintiff's Complaint as follows:

## GENERAL RESPONSE

Unless specifically admitted, Defendants deny all of the allegations in the numbered paragraphs of the Complaint.  Any admission herein is limited to the express language of the response and shall not be deemed an implied admission of additional facts.  Defendants need not admit or deny legal conclusions or arguments.  Although Defendants need not admit or deny legal conclusions or arguments, Defendants affirmatively deny that they have violated any applicable federal or state law, and assert that Plaintiff should be denied all of the relief requested.  Defendants answer the individual allegations of the Complaint as follows:

## PARTIES, JURISDICTION AND VENUE

### COMPLAINT ¶1:

Z.C. and C.C. are natural persons residing in Los Angeles County, California. Z.C. is C.C.'s father.

### ANSWER:

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1, and therefore on that basis, deny the allegations in said paragraph.

### COMPLAINT ¶2:

United is a California based entity with ties to the national United Healthcare Insurance Company corporation and was the insurer and claims administrator, as well as the fiduciary under ERISA for the health plan providing coverage for Z.C. and C.C. ("the Plan") during the treatment at issue in this case.

### ANSWER:

Paragraph 2 contains legal arguments that require no response.  For purposes of clarity, Defendants object to these legal arguments and deny the allegations.

2

**COMPLAINT ¶3:**

Optum processes mental health claims on United's behalf and was actively involved in denying payment for C.C.'s treatment at Elevations.

**ANSWER:**

Paragraph 3 contains legal arguments that require no response. For purposes of clarity, Defendants object to these legal arguments and deny the allegations. Defendants respond that the allegations in paragraph 3 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶4:**

The Plan is a fully insured employee welfare benefits plan under 29 U.S.C. §1001 et. seq., the Employee Retirement Income Security Act of 1974 ("ERISA"). Z.C. was a participant in the Plan and C.C. was a beneficiary of the Plan at all relevant times. Z.C. and C.C. continue to be participants and beneficiaries of the Plan.

**ANSWER:**

Admit.

**COMPLAINT ¶5:**

C.C. received medical care and treatment at Elevations Residential Treatment Center ("Elevations") from March 29, 2022, to January 5, 2023. Elevations is a licensed treatment facility located in Davis County Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5, and therefore on that basis, deny the allegations in said paragraph.

**COMPLAINT ¶6:**

United and Optum denied claims for payment of C.C.'s medical expenses in connection with his[1] treatment at Elevations.

**ANSWER:**

Admit that benefits were denied for certain claims submitted for inpatient services rendered

at Elevations.

**COMPLAINT ¶7:**

This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

**ANSWER:**

Paragraph 7 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and deny the allegations.

**COMPLAINT ¶8:**

Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because Defendants do business in Utah and directed Z.C. and C.C. to submit their appeals and other correspondence to a Salt Lake City location for processing, and because the treatment-at issue took place in Utah.

**ANSWER:**

Paragraph 8 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and deny the allegations.

**COMPLAINT ¶9:**

In addition, the Plaintiff has been informed and reasonably believes that litigating the case outside of Utah will likely lead to substantially increased litigation costs he will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiff's desire that the case be resolved in the State of Utah where it is more likely both his and C.C.'s privacy will be preserved.

---

[1] C.C. suffers from issues with gender dysphoria and in the past has gone by a female name and/or used female pronouns.

**ANSWER:**

Denied.

**COMPLAINT ¶10:**

The remedies the Plaintiff seeks under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

**ANSWER:**

Admit that Plaintiff asserts ERISA claims in the Complaint.  For the remaining allegations, paragraph 10 contains legal arguments that require no response.  For purposes of clarity, Defendants object to these legal arguments and deny the allegations.

## BACKGROUND FACTS
### C.C.'s Developmental History and Medical Background

**COMPLAINT ¶11:**

From a young age, C.C. struggled with behavioral issues which included impulsivity, resistance to discipline, disobedience, constant need for stimulation, and frequent tantrums. C.C. had difficulty interacting with peers and often became frustrated and non-cooperative.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11, and therefore on that basis, deny the allegations in said paragraph.

**COMPLAINT ¶12:**

C.C. struggled making friends and regulating emotions and underwent a neuropsychological assessment when he was seven years old. He was diagnosed with disruptive mood dysregulation disorder and an extensive list of school and therapeutic interventions were recommended by his treatment team.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 12, and therefore on that basis, deny the allegations in said paragraph.

**COMPLAINT ¶13:**

C.C. started attending a private school and receiving weekly therapy. By the time he was in fourth grade, C.C.'s behavior had become erratic enough that he was assigned his own parent-funded aide in the classroom. On one occasion, C.C. was suspended from school for a few days after stabbing another boy with a pencil.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 13, and therefore on that basis, deny the allegations in said paragraph.

**COMPLAINT ¶14:**

In middle school C.C. was given the title of the "second least-liked" kid by his peers. C.C. came out as bisexual and transgender and was teased and shunned by the other kids at school. This was exacerbated by C.C.'s difficulty with reading social cues.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 14, and therefore on that basis, deny the allegations in said paragraph.

**COMPLAINT ¶15:**

C.C. struggled when classes moved online during the Covid-19 pandemic and started refusing to participate in school and eventually refused to leave his room entirely. C.C. developed tics and stated that he was hearing voices. He also started self-harming and attempted suicide.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 15, and therefore on that basis, deny the allegations in said paragraph.

**COMPLAINT ¶16:**

C.C. experienced frequent anxiety, and his difficulties in functioning became severe enough that he was admitted to a partial hospitalization program called Visions. While there, C.C. was discovered to be binging and purging and was also self-harming by cutting, carving words and images into his body.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 16, and therefore on that basis, deny the allegations in said paragraph.

**COMPLAINT ¶17:**

This resulted in C.C. being placed under an involuntary hospital psychiatric hold, after which he began receiving residential treatment at Visions. C.C.'s treatment team at Visions recommended ongoing care after his discharge and he was subsequently admitted to Elevations.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 17, and therefore on that basis, deny the allegations in said paragraph.

**Elevations**

**COMPLAINT ¶18:**

C.C. was admitted to Elevations on March 29, 2022.

**ANSWER:**

Defendants respond that the allegations in paragraph 18 purport to recite or describe the

contents of documents that speak for themselves and are the best evidence of their contents.  To

the extent that these allegations are inconsistent with or mischaracterize such documents, they are

denied.

**COMPLAINT ¶19:**

In a letter dated April 12, 2022, addressed to Elevations, Optum denied payment for C.C.'s treatment from April 12, 2022, forward. The letter offered the following justification for the denial:

The member was admitted for the treatment of depression and anxiety.

After reviewing available information, it is noted he has made progress and his condition no longer meets CASH Recommendations for further coverage of treatment in this setting. His physical health is good. His depression and anxiety are better.

He is not reporting having thoughts of wanting to harm himself or others. His behavior is safe. He has family support. There's a safe, stable recovery environment available to him at home.

His care and recovery needs could be met in the CASH Service Level 4: Medically Monitored Non-Residential Service (Mental Health Partial Hospital Program) setting.

**ANSWER:**

Defendants respond that the allegations in paragraph 19 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶20:**

On December 9, 2022, C.C.'s mother submitted an appeal for the denial of payment for C.C.'s treatment at Elevations. She wrote that she was entitled to certain protections under ERISA during the appeal process, including a full, fair, and thorough review conducted by appropriately qualified reviewers whose identities were clearly disclosed, which took into account all of the information she provided, and which gave her the specific reasons for the adverse determination, referenced the specific plan provisions on which the denial was based, and which gave her the information necessary to perfect the claim.

**ANSWER:**

Defendants respond that the allegations in paragraph 20 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied

**COMPLAINT ¶21:**

She asked that the reviewers have experience treating individuals with C.C.'s diagnoses and that they be trained in the details of MHPAEA to respond to her allegations concerning a violation of the statute.

**ANSWER:**

Defendants respond that the allegations in paragraph 21 purport to recite or describe the

contents of documents that speak for themselves and are the best evidence of their contents.  To

the extent that these allegations are inconsistent with or mischaracterize such documents, they are

denied.

**COMPLAINT ¶22:**

She voiced her concern that Optum had not made any reference to any of C.C.'s medical records or other clinical information to justify their decision and had instead issued "conclusory statements" that were not supported by any evidence. She asked for a copy of any documentation related to the decision to deny care, including any internal case notes or reports.

**ANSWER:**

Defendants respond that the allegations in paragraph 22 purport to recite or describe the

contents of documents that speak for themselves and are the best evidence of their contents.  To

the extent that these allegations are inconsistent with or mischaracterize such documents, they are

denied.

**COMPLAINT ¶23:**

She noted that Optum claimed to have utilized the CASII criteria to evaluate C.C.'s treatment, even though these had been discontinued and replaced by the CALOCUS- CASII criteria.

**ANSWER:**

Defendants respond that the allegations in paragraph 23 purport to recite or describe the

contents of documents that speak for themselves and are the best evidence of their contents.  To

the extent that these allegations are inconsistent with or mischaracterize such documents, they are

denied.

## COMPLAINT ¶24:

She asked Optum to perform a MHPAEA compliance analysis on the Plan to ensure that it was operating in accordance with the statute. She asked Optum to not only conduct this analysis, but to also provide her with physical copies of the results of this analysis. She wrote that this was especially important given findings of widespread MHPAEA noncompliance by insurers brought to light in congressional investigations.

## ANSWER:

Defendants respond that the allegations in paragraph 24 purport to recite or describe the

contents of documents that speak for themselves and are the best evidence of their contents.  To

the extent that these allegations are inconsistent with or mischaracterize such documents, they are

denied.

## COMPLAINT ¶25:

C.C.'s mother pointed out that Optum authorized the initial portions of C.C.'s treatment, meaning that Optum at least initially determined that C.C. met all the prerequisites for care at the residential level.

## ANSWER:

Defendants respond that the allegations in paragraph 25 purport to recite or describe the

contents of documents that speak for themselves and are the best evidence of their contents.  To

the extent that these allegations are inconsistent with or mischaracterize such documents, they are

denied.

## COMPLAINT ¶26:

She went through the CALOCUS-CASII criteria point by point and argued that C.C.'s treatment should have remained approved if these criteria had been used and properly applied, and she made direct references to C.C.'s medical records to support her arguments.

**ANSWER:**

Defendants respond that the allegations in paragraph 26 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶27:**

She also expressed concern that Defendants' assessment seemed to be surface level evaluations which did not seem to even engage with many aspects of the criteria.

**ANSWER:**

Defendants respond that the allegations in paragraph 27 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶28:**

She criticized Optum's use of factors such as family support and making progress as justifications to deny payment. She noted that while C.C. did progress during treatment at Elevations, he was in a highly structured program, and there were also times when he regressed, and there was even a time that Elevations staff put him back down to his starting level.

**ANSWER:**

Defendants respond that the allegations in paragraph 28 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶29:**

She wrote that C.C. sabotaged his treatment. Picked at himself until he bled and then used

11

that blood to write with, had behaviors consistent with disordered eating, struggled with appropriate boundaries, and had not made sufficient progress to be able to discharge home in a safe and effective manner.

**ANSWER:**

Defendants respond that the allegations in paragraph 29 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶30:**

She asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits she was seeking, any administrative service agreements that existed, along with the names, qualifications, and denial rates of all individuals who reviewed the claim (collectively the "Plan Documents").

**ANSWER:**

Defendants respond that the allegations in paragraph 30 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶31:**

In a letter dated December 16, 2022, addressed to Elevations, Optum denied payment for C.C.'s treatment there. The reviewer stated that the denial had been upheld as:

> The member's presenting problems had improved. The member had no significant medical complications at the time. The member's mood symptoms were stable. The member's home environment was supportive with no barriers identified. The member was fully engaged and actively participating in treatment. The member was generally cooperative and appropriate and there have been no recent behavioral events to indicate risk of harm Based on the application of the American Association of Community Psychiatrists Level of Care Utilization System (CALOCUS-CASII), Mental Health Intensive

Outpatient Program services were indicated instead of the Mental Health Residential Treatment Center services requested.

**ANSWER:**

Defendants respond that the allegations in paragraph 31 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶32:**

Concurrently Optum sent another letter also dated December 16, 2022, addressed to C.C. which stated that payment had been denied due to:

Your request was reviewed. We have denied the medical services requested because we looked at your case notes. The criteria were not met because:

- You were doing better.
- You were thinking more clearly.
- Your mood was better.
- Your behavior was better.
- Your health was stable.

**ANSWER:**

Defendants respond that the allegations in paragraph 32 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶33:**

On March 14, 2023, C.C.'s mother asked for the denial of payment to be evaluated by an external review agency. She asked that the reviewer be appropriately qualified and that they consider all of the information she submitted, including her level one appeal and its accompanying exhibits.

**ANSWER:**

Defendants respond that the allegations in paragraph 33 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶34:**

She voiced her concern that the Optum reviewer had not referenced any clinical evidence, medical records, or other documentation to support their decision, and asked the next reviewer to identify the specific clinical evidence they relied upon.

**ANSWER:**

Defendants respond that the allegations in paragraph 34 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶35:**

She argued that Optum had failed to respect her rights under ERISA. She noted that Optum made a passing reference to applying the CALOCUS-CASII criteria but had not provided her with a copy of the criteria, had failed to reference which particular provisions were allegedly not met, had failed to disclose C.C.'s scores and sub-scores under the criteria, and had referenced factors to justify the denial which were not relevant to the actual requirements contained in the criteria. She stated that Upturn's lack of transparency made it difficult for her to effectively appeal the denial.

**ANSWER:**

Defendants respond that the allegations in paragraph 35 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

14

**COMPLAINT ¶36:**

She wrote that despite its claim, it was not evident whether Optum had actually used the CALOCUS-CASII criteria at all or whether it had applied them correctly if they were used. She stated that Optum had failed to meaningfully address her arguments, including her contention that coverage was available under the terms of the Plan and that C.C.'s treatment remained medically necessary.

**ANSWER:**

Defendants respond that the allegations in paragraph 36 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶37:**

She reiterated that Optum had approved the initial stages of C.C.'s treatment, but later denied payment based on "empty and irrelevant conclusory statements" which failed to meaningfully address any of the arguments she had made.

**ANSWER:**

Defendants respond that the allegations in paragraph 37 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶38:**

She accused Optum of failing to act in accordance with its fiduciary duty to act in her best interest. She included updated copies of C.C.'s medical records with the appeal and argued that his treatment remained medically necessary, and that Elevations was the lowest level of care at which he could receive treatment which was both safe and effective. She again asked for a copy of the Plan Documents.

**ANSWER:**

Defendants respond that the allegations in paragraph 38 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶39:**

In a letter dated April 4, 2023, Optum stated that it had received the review request but that "you have exhausted your right for any further review through the health plan."

**ANSWER:**

Defendants respond that the allegations in paragraph 39 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶40:**

The Plaintiff exhausted his pre-litigation appeal obligations under the terms of the Plan and ERISA.

**ANSWER:**

Paragraph 40 contains legal arguments that require no response. For purposes of clarity, Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶41:**

The denial of benefits for C.C.'s treatment was a breach of contract and caused Z.C. to incur medical expenses that should have been paid by the Plan in an amount totaling over $170,000.

**ANSWER:**

Denied.

**COMPLAINT ¶42:**

Defendants failed to produce a copy of the Plan Documents including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities despite Plaintiff's requests.

**ANSWER:**

Paragraph 42 contains legal arguments that require no response. For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

## FIRST CAUSE OF ACTION
### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

**COMPLAINT ¶43:**

ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United and Optum, acting as agents of the Plan, to discharge their duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

**ANSWER:**

Paragraph 43 contains legal arguments that require no response. For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶44:**

Defendants failed to provide coverage for C.C.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

**ANSWER:**

Paragraph 44 contains legal arguments that require no response. For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶45:**

ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to

17

engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

**ANSWER:**

Paragraph 45 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶46:**

The denial letters produced by Defendants do little to elucidate whether they conducted a meaningful analysis of the Plaintiffs appeals or whether it provided him with the "full and fair review" to which he is entitled.

**ANSWER:**

Paragraph 46 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶47:**

Defendants failed to substantively respond to the issues presented in Z.C.'s appeals and did not meaningfully address the arguments or concerns that were raised during the appeals process.

**ANSWER:**

Paragraph 47 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶48:**

After approving the initial stages of treatment at Elevations, Defendants failed to meaningfully reference what specific factors led to C.C.'s treatment no longer being medically necessary, other than nondescript assertions such as "[y]our mood was better."

**ANSWER:**

Paragraph 48 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶49:**

Better mood and similar referenced factors are not a condition for denying or approving payment for residential treatment under the terms of the Plan, or the criteria Defendants purported to have used. C.C.'s mother asked Defendants to reference the specific contractual language they relied upon to deny payment but they refused, failed, or were unable to do so.

**ANSWER:**

Paragraph 49 contains legal arguments that require no response.  For purposes of clarity, Defendants object to these legal arguments and denies these allegations.  Defendants respond that the allegations in paragraph 49 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents.  To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶50:**

United, Optum, and the agents of the Plan breached their fiduciary duties to C.C. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in C.C.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of C.C.'s claims.

**ANSWER:**

Denied.

**COMPLAINT ¶51:**

The actions of United, Optum, and the Plan in failing to provide coverage for C.C.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

**ANSWER:**

Denied.

**COMPLAINT ¶52:**

While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed

under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under each cause of action.

**ANSWER:**

Denied.

## SECOND CAUSE OF ACTION
### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

**COMPLAINT ¶53:**

MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Defendants' fiduciary duties.

**ANSWER:**

Paragraph 53 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶54:**

MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

**ANSWER:**

Paragraph 54 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶55:**

MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

**ANSWER:**

Paragraph 55 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶56:**

Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

**ANSWER:**

Paragraph 56 contains legal arguments that require no response.  For purposes of clarity,

Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶57:**

The medical necessity criteria used by Defendants for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

**ANSWER:**

Denied.

**COMPLAINT ¶58:**

Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for C.C.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

**ANSWER:**

Defendants respond that the allegations in paragraph 58 purport to recite or describe the

contents of documents that speak for themselves and are the best evidence of their contents.  To

the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶59:**

When Defendants and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

**ANSWER:**

Defendants respond that the allegations in paragraph 59 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶60:**

Defendants and the Plan evaluated C.C.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

**ANSWER:**

Denied.

**COMPLAINT ¶61:**

As an example of disparate application of medical necessity criteria between medical/surgical and mental health treatment, Defendants' reviewers improperly utilized acute medical necessity criteria to evaluate the non-acute treatment that C.C. received. Defendants' improper use of acute inpatient medical necessity criteria is revealed in the statements in Defendants' denial letters such as "He is not reporting having thoughts of wanting to harm himself or others."

**ANSWER:**

Denied as to allegations regarding "disparate application[s]." Defendants respond that the allegations in paragraph 61 purport to recite or describe the contents of documents that speak for

22

themselves and are the best evidence of their contents.  To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶62:**

This improper use of acute inpatient criteria was a nonquantitative treatment limitation that cannot permissibly be applied to evaluate the sub-acute level of care that C.C. received. The Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria to receive Plan benefits.

**ANSWER:**

Denied as to allegations regarding "improper use."  Defendants respond that the allegations in paragraph 62 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents.  To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶63:**

Treatment provided in an acute care environment is necessarily distinct from treatment provided in a non-acute environment. Utilizing acute criteria to evaluate a non-acute claim will result in a near universal denial of benefits, regardless of the medical necessity, clinical appropriateness, or nature of the treatment.

**ANSWER:**

Denied as to allegations regarding "near universal denial of benefits."  Defendants respond that the allegations in paragraph 63 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents.  To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶64:**

The Defendants cannot and will not deny that use of acute care criteria, either on its face or in application, to evaluate sub-acute treatment violates generally accepted standards of medical practice. They must and do acknowledge that they adhere to generally accepted standards of medical practice when they evaluate the medical necessity criteria of both mental health/substance use disorders and medical/surgical claims.

**ANSWER:**

Paragraph 64 contains legal arguments that require no response.  For purposes of clarity, Defendants object to these legal arguments and denies these allegations.

**COMPLAINT ¶65:**

Defendants' requirement of acute level symptoms for a non-acute level of care also poses a problem as C.C. presented no suicidal or homicidal behaviors during the dates of treatment Defendants approved. Nevertheless, Defendants used the absence of acute level symptoms as a justification to deny payment once Defendants opined that treatment was no longer necessary.

**ANSWER:**

Denied as to allegations regarding "poses a problem."  Defendants respond that the allegations in paragraph 65 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents.  To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶66:**

As another example of the Plan's improper application of its criteria to evaluate the treatment C.C. received, the Defendants relied on assertions such as "[y]ou were thinking more clearly" as a justification to deny treatment. In fact, thinking clearly serves as an indicator rather than a contra-indicator of the medical necessity of treatment in a non-acute residential setting.

**ANSWER:**

Denied as to allegations regarding "improper application."  Defendants respond that the allegations in paragraph 66 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents.  To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶67:**

Thinking clearly is also not a disqualifier for residential care in the terms of the Plan or any of Defendants' criteria, but the Defendants improperly utilized it and similar allegations as justifications for denying coverage.

**ANSWER:**

Defendants respond that the allegations in paragraph 67 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶68:**

The appeals in this case asked for additional information and documentation to understand and assert a MHPAEA cause of action with more clarity but Defendants refused or failed to provide it.

**ANSWER:**

Defendants respond that the allegations in paragraph 68 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶69:**

This refusal to produce documentation hinders Plaintiff's ability to properly assert a cause of action for a denial of MHPAEA, or to even fully know why the claims were denied.

**ANSWER:**

Paragraph 69 contains legal arguments that require no response. For purposes of clarity, Defendant objects to these legal arguments and denies these allegations.

**COMPLAINT ¶70:**

Plaintiff has knowledge and evidence that United's sister entity, United Healthcare Insurance Company, and its related corporations began unjustifiably blacklisting Elevations from any and all coverage in April of 2022 after Elevations declined to renew its in-network status with United.

**ANSWER:**

Denied.

**COMPLAINT ¶71:**

Defendants' refusal to comply with documentation requests and their reliance on overly generalized denial language interferes with Z.C.'s ability to determine whether C.C.'s April 2022 denial was justified and impairs his ability to determine to what extent Defendants are in compliance with MHPAEA.

**ANSWER:**

Denied.

**COMPLAINT ¶72:**

In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Defendants, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

**ANSWER:**

Denied.

**COMPLAINT ¶73:**

Defendants and the Plan did not produce the documents the Plaintiff requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiff's allegations that Defendants and the Plan were not in compliance with MHPAEA.

**ANSWER:**

Defendants respond that the allegations in paragraph 73 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

26

**COMPLAINT ¶74:**

In fact, despite Z.C.'s request that Defendants and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, Defendants and the Plan have not provided Z.C. with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, Defendants and the Plan have not provided Z.C. with any information about the results of this analysis.

**ANSWER:**

Defendants respond that the allegations in paragraph 74 purport to recite or describe the contents of documents that speak for themselves and are the best evidence of their contents. To the extent that these allegations are inconsistent with or mischaracterize such documents, they are denied.

**COMPLAINT ¶75:**

The violations of MHPAEA by Defendants and the Plan are breaches of fiduciary duty and give the Plaintiff the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

(a)    A declaration that the actions of the Defendants violate MHPAEA;

(b)    An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

(c)    An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

(d)    An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e)    An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f)    An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiff as make-whole relief for his loss;

(g)    An order equitably estopping the Defendants from denying the Plaintiff's claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to the Plaintiff for his loss arising out of the Defendants' violation of MHPAEA.

**ANSWER:**

Denied.

27

**COMPLAINT ¶76:**

In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

**ANSWER:**

Denied.

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the total amount that is owed for C.C.'s medically necessary treatment at Visions and Elevations under the terms of the Plan, plus pre and post-judgment interest to the date of payment;
2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiff's Second Cause of Action;
3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and
4. For such further relief as the Court deems just and proper.

**ANSWER:**

Denied.

## PLAINTIFF'S PRAYER FOR RELIEF

In response to Plaintiff's Prayer for Relief, Defendants respond that Plaintiff's requests for relief consist of conclusions of law rather than factual allegations, and accordingly no answer is required.

Defendants further deny that Plaintiff is entitled to any of the relief sought in Plaintiff's Prayer for Relief.

## AFFIRMATIVE DEFENSES

Defendants have not yet completed its investigation in this matter. Defendants reserve all rights to alter or amend its responsive pleading and affirmative defenses. Without assuming the burden of proof where it otherwise rests with Plaintiff, Defendants assert the following affirmative defenses as may prove applicable after discovery and/or a bench trial.

28

### AFFIRMATIVE DEFENSE NO. 1.

The Complaint fails to set forth facts sufficient to state a claim upon which relief may be granted against Defendants and further fails to state facts sufficient to entitle Plaintiff to the relief sought, or any other relief whatsoever from Defendants.

### AFFIRMATIVE DEFENSE NO. 2.

The decision to deny Plaintiff's claims for benefits should be reviewed under the abuse of discretion/arbitrary and capricious standard and there is substantial evidence supporting the denial of Plaintiff's claims.

### AFFIRMATIVE DEFENSE NO. 3.

Defendants, or the correct administrator of the plan, has performed all obligations required by the applicable health plan and all related documents.  Plaintiff is not entitled to any relief under ERISA.

### AFFIRMATIVE DEFENSE NO. 4.

The terms and conditions of the applicable health plan are incorporated by reference as if fully set forth herein and stand as a bar to some or all of the relief requested in the Complaint.

### AFFIRMATIVE DEFENSE NO. 5.

Plaintiff's claims for relief are implausible, lack a factual foundation, and are contrary to the applicable health plan's terms.

### AFFIRMATIVE DEFENSE NO. 6.

To the extent that Defendants engaged in any of the acts complained of, such acts were excused, justified, and/or privileged.

## AFFIRMATIVE DEFENSE NO. 7.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, by any applicable statute of limitations and/or any contractual limitations period set forth in the applicable plan.

## AFFIRMATIVE DEFENSE NO. 8.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, to the extent that Plaintiff failed to mitigate damages.

## AFFIRMATIVE DEFENSE NO. 9.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, by the applicable principles of waiver and/or estoppel.

## AFFIRMATIVE DEFENSE NO. 10.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, by the doctrine of unclean hands.

## AFFIRMATIVE DEFENSE NO. 11.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, by the doctrines of collateral estoppel and res judicata.

## AFFIRMATIVE DEFENSE NO. 12.

Plaintiff's alleged injuries and/or damages in the Complaint, if any, were not proximately caused by the acts or omissions of Defendants, and any injury and/or damages that Plaintiff alleges it suffered, if any, resulted from a cause or causes not legally or proximately related to any act or omission of Defendants.

### AFFIRMATIVE DEFENSE NO. 13.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, whole or in part, to the extent any conduct attributable to Defendant was ratified or consented to by Plaintiff.

### AFFIRMATIVE DEFENSE NO. 14.

Upon information and belief, some or all of the billed charges are excessive under applicable standards, and/or Plaintiff has failed to identify any basis for entitlement to demand receipt of billed charges.

### AFFIRMATIVE DEFENSE NO. 15.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, whole or in part, to the extent that Plaintiff has not suffered any damages.

### AFFIRMATIVE DEFENSE NO. 16.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, to the extent Plaintiff lacks standing to pursue claims for relief in the Complaint.

### AFFIRMATIVE DEFENSE NO. 17.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, to the extent that any of the at-issue claims are for healthcare services rendered by facilities or healthcare providers that were not contracted as a participating provider with Defendantsand therefore what is demanded by Plaintiff is not required under the applicable health plan.

### AFFIRMATIVE DEFENSE NO. 18.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, to the extent that Plaintiff seeks to recover full-billed charges, which is void as against public

policy because the charges are exorbitant, arbitrary, and unreasonable, and would unnecessarily increase overall healthcare costs, including causing potential premium increases.

**AFFIRMATIVE DEFENSE NO. 19.**

To the extent that Plaintiff has any right to receive health plan benefits, that right is subject to basic preconditions and prerequisites that have not been established, including, but not limited to, coordination of benefits, that the services were medically necessary or covered, that Plaintiff timely submitted correctly coded claims and supplied any requested documentation, that any necessary authorizations were obtained prior to rendering the reported services, and that any requirements of administrative exhaustion were satisfied. Therefore, Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, to the extent that Plaintiff seeks to recover amounts for services where: (i) claims were submitted for services not actually performed; (ii) multiple benefit claims were submitted for the same services performed or associated costs; (iii) Plaintiff seek reimbursement using incorrect procedural terminology or other billing codes, for example, where a claim was submitted using a Current Procedural Terminology code that was not justified under the circumstances; (iv) Plaintiff seeks reimbursement for services rendered after an improper kickback or other improper benefit was provided (including where there was an improperly waiver or payment of co-payment, coinsurance, deductible, or other amount that the Plaintiff was legally obligated to pay); (v) Plaintiff seeks reimbursement for amounts that fail to take into account co-payment, coinsurance, deductibles that must be recovered as a matter of law and/or industry practice and/or any other terms, conditions, exclusions, or limitations of the applicable health plan; and/or (vi) Plaintiff failed to exhaust mandatory administrative and/or contractual remedies.

32

## AFFIRMATIVE DEFENSE NO. 20.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, to the extent that Plaintiff seeks to unjustly enrich Plaintiff or the out-of-network facility by allowing the retention of funds in excess of any amounts appropriately due for covered services.

## AFFIRMATIVE DEFENSE NO. 21.

Upon information and belief, the claims asserted in the Complaint are subject to setoff and/or recoupment with respect to claims for which payment was made, but were improperly coded and submitted.

## AFFIRMATIVE DEFENSE NO. 23.

Plaintiff's Complaint, and each purported claim alleged therein, is barred, in whole or in part, to the extent that Plaintiff seeks relief under theories not available under ERISA and/or where there is no Parity Act violation.

## AFFIRMATIVE DEFENSE NO. 24.

It has been necessary for Defendants to employ the services of an attorney to defend the action, and a reasonable sum should be allowed for Defendants' attorney's fees and all incurred costs, including as permitted under ERISA.

## AFFIRMATIVE DEFENSE NO. 25 - RIGHT TO ASSERT OTHER DEFENSES

Defendants reserve the right to assert, and hereby gives notice, that they intend to rely upon, any other defenses that may become available during discovery proceedings or otherwise in this case and hereby reserves the right to amend this Answer to assert additional defenses.

DATED: April 13, 2026                    SEYFARTH SHAW LLP

                                         By: */s/ Mark A. Wagner*
                                         Mark A. Wagner

                                         *Counsel for Defendants*